CARTER WOLDEN CURTIS
KIRK J. WOLDEN, SBN 138902
1111 Exposition Boulevard, Suite 602
Sacramento, CA 95815
Telephone:      (916) 567-1111
Facsimile:      (916) 567-1112
Email:          kirk@cwclawfirm.com

GOLOMB & HONIK
KENNETH J. GRUNFELD (To be admitted *Pro Hac Vice*)
151 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone:      (215) 278-4449
Email:          KGrunfeld@GolombHonik.com

Attorneys for Plaintiff and the Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLAN BLACK, CHRISTOPHER JONES, ROGER WATTS, and ROBERT MATOS RIVERA, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| Shenzen Sunshine Technology Development, LTD, Acumen Robot Intelligence, Inc., Sam Tsu, D/B/A ONAGOFLY, and DOES 1-100, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Allan Black, Christopher Jones, Roger Watts, and Robert Matos Rivera, ("Plaintiffs"), allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief based upon, inter alia, investigation conducted by their attorneys:

1

## NATURE OF THE CLAIM

1.      Plaintiffs' claims herein are based upon Defendants' deceptive, fraudulent, and illegal practices relating to the national marketing and sale of the Onagofly drone marketed as Onagofly F115 (the "Onagofly F115 drone" or the "Onagofly drone").



2.      Defendants have perpetrated a scam upon the fast-growing drone-buying community by duping consumers into purchasing Onagofly F115s that lack various specifications as advertised or, in some cases, by not even delivering a purchased Onagofly F115 at all.

3.      Defendants have placed in the marketplace for sale a product that does not live up to its billing and have not delivered on their own express promises in a number of important ways:

    a.  Despite billing for and accepting the payments from consumers, Defendants are not providing the Onagofly F115 drone as promised, or at all;

    b.  Defendants' customer service department is non-existent, such that it is completely unresponsive to the hundreds if not thousands of customer complaints regarding the Onagofly F115 drone.

    c.  Defendants represent that the Onagofly drone contains a 15 Megapixel Sony camera. Instead, the camera in the drone is of a significantly lower resolution than promised. In fact, the video that Onagofly touts on its website http://www.onagofly.com as having been shot with an Onagofly drone was in fact not filmed by an Onagofly drone, and instead was filmed by a different drone equipped with a higher resolution camera than the Onagofly drone.

     d.  Defendants represent that the Onagofly drone has a 800 mAh or even a 1000 mAh battery. It does not. The battery is less powerful than promised and will not hold a sufficient charge.

     e.  The Onagofly drone does not have or maintain the stability or control in the air which is promised, and the propellers are of poor quality and break easily.

     f.  The GPS applications touted in Onagofly's marketing materials do not work; the drone fails to orient itself or follow the user as promised.

4.    Plaintiffs bring this suit as a class action to enjoin Defendants' deceptive behavior, and to recover damages, attorneys' fees and costs related to Defendants' flagrant violations of law.

## PARTIES

5.    Plaintiff ALLAN BLACK is a resident of the State of California. Mr. Black purchased an Onagofly drone by making a "contribution" payment through the www.indiegogo.com website, but the purchase was made from the Defendants for the plaintiff to receive an Onagofly F115 drone as promised by the Defendants.

6.    Plaintiff CHRISTOPHER JONES is a resident of the State of Michigan. Mr. Jones purchased an Onagofly drone by making a "contribution" payment through the www.indiegogo.com website, but the purchase was made from the Defendants for the plaintiff to receive an Onagofly F115 drone as promised by the Defendants.

7.    Plaintiff ROGER WATTS is a resident of the State of Minnesota. Mr. Watts purchased an Onagofly drone by making a "contribution" payment through the www.indiegogo.com website, but the purchase was made from the Defendants for the plaintiff to receive an Onagofly F115 drone as promised by the Defendants

8.    Plaintiff ROBERT MATOS RIVERA is a resident of the State of Illinois. Mr. Matos Rivera purchased an Onagofly drone by making a "contribution" payment through the www.indiegogo.com website, but the purchase was made from the Defendants for the plaintiff to receive an Onagofly F115 drone as promised by the Defendants.

9.    Defendant Shenzen Sunshine Technology Development, LTD (Shenzen) is the manufacturer and seller of the Onagofly drone. It is a foreign corporation with its principal place of business at RM B508, ZhantaoTech Building, Minzhi Street, Longua New Dist in Shenzhen,

3

1    Guangdong, China, and in the United States at 76 Maxwell Street in Irvine, California.   Shenzen

2    does business throughout the United States, including in the states and counties where the Plaintiffs

3    reside.

4         10.    Defendant Acumen Robot Intelligence, Inc. (ARI) is the manufacturer and seller of

5    the Onagofly drone.   ARI is a Delaware corporation with its principal place of business at 590 West

6    Central Avenue, Suite A in Brea, California, 92821 and at 5348 Vegas Drive in Las Vegas, Nevada,

7    89101.   ARI does business throughout the United States, including in the states and counties where

8    the Plaintiffs reside.   ARI can be served through its registered agent

9         11.    Defendant Sam Tsu is, and at all times relevant hereto was, a resident of the State of

10   California and the founder and chief product manager for all Onagofly products, including the

11   drone at issue in this lawsuit.   Mr. Tsu resides in Beverly Hills, California.

12        12.    The true names and capacities, whether individual, corporate, associate or otherwise

13   of certain manufacturers, distributors and/or their alter egos sued herein as DOES 1 through 100

14   inclusive are presently unknown to Plaintiffs who therefore sue these Defendants by fictitious

15   names.   Plaintiffs will seek leave of this Court to amend the Complaint to show their true names

16   and capacities when the same have been ascertained.   Plaintiffs are informed and believe, and based

17   thereon allege, that DOES 1 through 100 were authorized to do and did business throughout the

18   United States, including in the states and counties where the Plaintiffs reside.   Plaintiffs are further

19   informed and believe, and based thereon alleges, that DOES 1 through 100 were and/or are, in some

20   manner or way, responsible for and liable to Plaintiffs for the events and happenings set forth

21   herein.

22        13.    Plaintiffs are informed and believe and based thereon allege that at all times relevant

23   herein each Defendant was the agent, servant, employee, subsidiary, affiliate, partner, assignee,

24   successor-in-interest, alter ego or other representative of each of the remaining Defendants and was

25   acting in such capacity in doing the things herein complained of and alleged.

26        14.    In committing the wrongful acts alleged herein, Defendants planned and participated

27   in and furthered a common scheme by means of false, misleading, deceptive and fraudulent

28   representations to induce members of the public to purchase defective products based on

misrepresentations and omissions.  Defendants participated in the making of such representations in that each did disseminate or cause to be disseminated said misrepresentations.  Indeed, since the first time that Defendants' business was advertised, Defendants have been aware that participants would not be receiving products as promised.

15.     Defendants affirmatively misrepresented the characteristics of its product in order to convince the public to purchase the product, resulting in revenue to Defendants, all to the damage and detriment of the public.  Thus, in addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and knowingly assisted each other in breach of their respective duties and obligations and herein alleged.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332 because Plaintiff and Class Members are citizens of the United States including but not limited to the State of California, and Defendants are residents of the State of California or foreign countries. The aggregate value of the Class Members' claims exceeds the sum or value of five million dollars ($5,000,000.00), exclusive of recoverable interest and costs. None of the causes of action stated herein has been assigned or otherwise given to any other court or tribunal.

17.     Venue is proper in this Judicial District pursuant to 28 U.S.C. Section 1332(a)(2) because Defendants are residents of foreign states or California, do substantial business within the State of California and in this Judicial District, and otherwise maintain the requisite minimum contacts within the State of California. Additionally, Defendants market, advertise, distribute, sell, and receive substantial profits from the sales of the Onagofly F115 drone in this District, and have and continue to conceal and make material omissions in this District, so as to subject them to *in personam* jurisdiction in this Judicial District. A substantial factor of the events and omissions concerning the claims of Plaintiff and the Class occurred within this District. Furthermore, venue is proper in this District because Plaintiff purchased an Onagofly F115 drone from within this District.

///

///

///

5

## **ALTER EGO ALLEGATIONS**

18.     Plaintiffs are informed and believe and based thereon allege that Defendants ARI and Shenzen are the alter ego for Defendant Tsu.

19.     Upon information and belief, Defendant Tsu is the founder, CEO, and a principal shareholder or owner of ARI and Shenzen, d/b/a Onagofly.

20.     Plaintiffs are informed and believes and based thereon allege that Defendant Tsu controls ARI and Shenzen, d/b/a Onagofly, and uses the latter as a shell and conduit for his own personal business affairs, thus demonstrating a unity of interest between them.

21.     For instance, upon information and belief:

a.   Defendant Tsu uses the same office and building locations, and other property, as ARI and Shenzen, d/b/a Onagofly to conduct his personal business affairs.

b.   ARI and Shenzen, d/b/a Onagofly has failed to maintain or provide adequate corporate and other records.

c.   ARI and Shenzen, d/b/a Onagofly is insufficiently funded, evidenced by its failure to consistently refund or reimburse the Class monies requested after their purchase of the defective product.

d.   Defendant Tsu has created separate sister or shell companies, including but not limited to ARI and Shenzen, and substantially benefited personally as a result, but has since become delinquent on tens of thousands of dollars worth of payments owed.

22.     Defendants go to great lengths to hide their identity, including, upon information and belief, using shell companies, fictitious names, and anonymous website registrations.

23.     During the life of ARI and Shenzen, Mr. Tsu was residing in the State of California.

24.     ARI and Shenzen, d/b/a Onagofly are nothing but the alter-egos of Mr. Tsu; Mr. Tsu and ARI and Shenzen, d/b/a Onagofly are one in the same.

25.     Mr. Tsu personally directed and participated in the fraudulent activity described in this complaint, knowingly using a set of revolving corporations (of which he was the principal shareholder) to carry out his willful and deliberate fraudulent activity with one purpose in mind: avoiding personal liability.

6

26. Therefore, special circumstances exist to sue Mr. Tsu in his personal capacity.

27. Mr. Tsu was the inventor of the Onagofly drone.

28. When purchasing an Onagofly drone through indiegogo or other crowd funding websites, purchasers are told they are "contributing" to Onagofly such that a reasonable expectation of a return of investment, in the form of receipt of the promised drone, would be delivered to each purchaser.

29. This is further evidence of ARI and Shenzen, d/b/a Onagofly and Mr. Tsu were conscious of their involvement with the fraudulent marketing and selling of this product, and seeking to avoid any potential personal liability.

30. ARI and Shenzen, d/b/a Onagofly and Mr. Tsu were in large part responsible for Defendants' deceptive advertising, approved the representations contained on Defendants' website, and knew that these representations were false.

31. ARI and Shenzen, d/b/a Onagofly and Mr. Tsu have purposefully provided little to no customer service for the Onagofly drone consumers, knowing there would be mass dissatisfaction with the product given their misrepresentations.

32. Upon information and belief, ARI and Shenzen, d/b/a Onagofly and Mr. Tsu were the primary beneficiaries of sales of the Onagofly drone, and in significant part responsible for the deceptive marketing campaign described herein and is liable to Plaintiff and the Class.

33. To remain the corporate formality of ARI and Shenzen, d/b/a Onagofly would, under the circumstances, promote injustice in that Plaintiffs and the Class would be unable to realize any judgment in their favor.

**FACTUAL ALLEGATIONS**

34. The market for drones is exploding in the United States and abroad. By most accounts, the number of drones sold in the U.S. has more than doubled in the last year. http://www.marketwatch.com/story/drone-sales-in-the-us-more-than-doubled-in-the-past-year-2016-05-27 (last accessed Nov. 28, 2016).

35. While drones may have a reputation as simply toys for children, the reality is that most drone owners are adults who buy drones to perform a multitude of tasks, including

7

1  commercial uses.  Indeed, in August 2016, the Federal Aviation Administration (FAA) stated it

2  "expects   some   600,000   drones   to   be   used   commercially   within   a   year."

3  http://www.npr.org/sections/thetwo-way/2016/08/29/491818988/faa-expects-600-000-commercial-

4  drones-in-the-air-within-a-year (last accessed Nov. 28, 2016).

5      36.  Further, the majority of drones are being purchased either directly from the

6  manufacturer or dedicated drone dealers, as opposed to at big box retailers.  *See, e.g.*,

7  https://www.amazon.com/b?node=8037720011.  So while the industry is booming, the market is

8  still specialized.

9      37.  Taking advantage of this unique and exploding market, the Defendants designed and

10  built a drone under the name Onagofly and marketed as the Onagofly F115 drone to try to capture a

11  segment of the consumer market looking to spend less money for a smaller, versatile drone with

12  multiple functions.

13      38.  Defendants market, sell, and derive revenue from the Onagofly drone.  Upon

14  information and belief, Defendants are the sole merchants of the Onagofly drone, with the majority,

15  though certainly not all, of the sales of the product originating at www.indiegogo.com, a crowd-

16  funding website.

17      39.  Defendants charged anywhere from $180-$280 for the drone, depending on time it

18  was sold and on what website it was sold.

19      40.  At this price, while still expensive, Defendants marketed its drone to a more casual

20  drone-buying community, such as consumers who have never owned or operated a drone before,

21  trying to cash in on the drone craze.

22  **Defendants' Uniform Misrepresentations and Omissions**

23      41.  Through its website, http://www.onagofly.com, Defendants make uniform and

24  consistent misrepresentations to all its customers.  Even when the product is purchased through

25  other websites, such as www.indiegogo.com or https://www.alibaba.com, Defendants knowingly

26  disseminate, direct, or endorse or re-affirm the same uniform and consistent misrepresentations

27  made on their own website.

28  ///

8

42.     Defendants make the following uniform deceptive and misleading representations to induce customers to buy the product and its accessories.   Among the uniform statements encountered on Defendants' website, or disseminated at Defendants' knowledge or direction, are the following:

a.   Defendants are not providing the Onagofly drone and its accessories as promised, on time, even or at all in some instances, despite billing for and accepting the payments from consumers.

b.   Defendants promise to be responsive to customer complaints and inquiries, but they have failed to live up to these promises.   In fact, Defendants' customer service department is non-existent, such that it is completely unresponsive to the hundreds if not thousands of customer complaints regarding the Onagofly drone.

c.   Defendants represent that the Onagofly drone contains a 15 Megapixel Sony camera. Instead, the camera in the drone is of a significantly lower resolution than promised. In fact, the video that Onagofly touts on its website http://www.onagofly.com as having been shot with an Onagofly drone was in fact not filmed by an Onagofly drone at all; instead, it was filmed by a different drone with a higher resolution camera than the Onagofly drone.

d.   Defendants represent that the Onagofly drone has a 800 mAh or even 1000 mAh battery.   It does not.   They omit that the battery is less powerful than promised and will not hold a charge sufficient for flying the drone for any longer periods of time.

e.   Defendants omit that the Onagofly drone does not have or maintain the stability or control in the air promised, and the propellers are of poor quality and break easily.

f.   The GPS applications do not work; the drone fails to orient itself or follow the user as promised.

43.     In fact, the Onagofly drone is nothing more than a spruced-up paper weight.   The technology is basic and Defendants had no basis whatsoever for the claims that the drone would be or ever was serviceable.   Despite this, Defendants continued to make these representations to Plaintiffs and the Class, garnering approximately $200 per sale of what is basically a worthless product.

44.     A clear example of the Defendants' fraudulent actions is the video displayed on the Onagofly website.   Defendants represent that this is a video that was shot on an Onagofly drone.   In

9

reality, the video that exists on the Onagofly website was in fact recorded on a much more sophisticated drone manufactured by another company.

45.    Plaintiff bring this suit as a class action to enjoin Defendants' deceptive behavior, and to recover damages suffered by the community of consumers that purchased this drone based on the misrepresentations and omissions of fact perpetuated by the Defendants.

**Facts Regarding Plaintiffs**

**<u>Allan Black</u>**

46.    Plaintiff Allan Black enjoys flying drones and creating videos and photographs as a hobby.   At all relevant times he resided in Los Angeles County, California.

47.    On or around mid-December 2015, Plaintiff Black was actively looking at drones to purchase.  He was specifically looking for a fully functional drone that he could bring with him on, and use during, various outings or trips, such as on hikes. It was around this time that he began seeing internet advertisements for the Onagofly drone.   He visited Defendants' website at http://www.onagofly.com, where he reviewed various marketing materials and advertisements for Defendants' product.

48.    Plaintiff Black was induced to purchase the Onagofly drone based on the uniform and material misrepresentations and omissions by Defendants including but not limited to those listed in this Complaint.

49.    Plaintiff Black went to the indiegogo website to purchase the Onagofly drone. Under the terms of the sale, Plaintiff Black paid $199.99 in exchange for one Onagofly drone in or around December 2015.

50.    After making payment, Plaintiff Black received the product in late March 2015.

51.    What he discovered quite quickly and clearly was that the Onagofly drone was not the product promised.  There was no GPS lock as promised, and the drone frequently flies away and crashes.  There is also no "follow me" option as promised, nor was there an obstacle avoidance feature as promised.

///

///

52.     Had Plaintiff Black known the truth about Defendants' product, that it did *not* have the characteristics promised on Onagofly's website, neither he nor any reasonable person would have purchased the product, especially given its significantly high price.

**Christopher Jones**

53.     Plaintiff Christopher Jones is a employed as a Computer Animator and is a drone and related technology hobbyist.  At all relevant times he resided in the state of Michigan.

54.     On or around December 2015, Plaintiff Jones was actively looking at drones to purchase.   Plaintiff has purchased two drones in the past and wanted to purchase a more advanced drone.  He visited Defendants' website at http://www.onagofly.com, where he reviewed various marketing materials and advertisements for Defendants' product.

55.     Plaintiff was induced to purchase the Onagofly F115 drone based on the uniform and material misrepresentations and omissions by Defendants including but not limited to those listed in this Complaint.

56.     Plaintiff went to the indiegogo website to purchase a drone.  Under the terms of the sale, Plaintiff paid $259.99 in exchange for one Onagofly drone on or around January 2016.

57.     After making payment, Plaintiff Jones received the product.

58.     What he discovered quite quickly and clearly was that the Onagofly drone was not the product promised.  It lacked certain of the characteristics Defendants had previously advertised.  More specifically, it was unable to perform the basic function of flying at consistent speeds.  Additionally, the video capabilities of the drone were grossly misrepresented.

59.     Had Plaintiff Jones known the truth about Defendant's product, that it did *not* have the characteristics promised on Onagofly's website, neither he nor any reasonable person would have purchased the product, especially given its significantly high price.

**Robert Matos Rivera**

60.     Plaintiff Robert Matos Rivera is a casual drone enthusiast.  At all relevant times he resided in the state of Illinois.

///

///

11

61.     On or around February 2016, Plaintiff Rivera was actively looking at drones to purchase.  He visited Defendants' website at http://www.onagofly.com, where he reviewed various marketing material and advertisements for Defendants' product.

62.     Plaintiff Rivera purchased the drone for $199 directly from the indiegogo site.  In or around April 2016, Plaintiff received an email from Onagofly customer service informing him that they missed the shipping deadline but would be shipping as soon as possible.

63.     Plaintiff made a series of calls to check the status of his drone order, all of which went unanswered by the Onagofly customer service number.

64.     In or around mid-September 2016, Plaintiff received another email from Defendants informing him that all orders have been shipped from the factory and all customers should receive their drones no later than 9/18/2016.

65.     Plaintiff Rivera did not receive the Onagofly drone on or around 9/18/2016.

66.     To date, Plaintiff Rivera still has not received his drone, almost ten months after making the purchase.

67.     Had Plaintiff Rivera known the truth about Defendants' product, that it was likely that he would not receive the product he paid for, neither he nor any reasonable person would have purchased the product, especially given its significantly high price.

**Roger Watts**

68.     Plaintiff Roger Watts, Ph.D. is a casual drone enthusiast.  At all relevant times he resided in the state of Minnesota.

69.     On or around January 16, 2016, Plaintiff Watts was actively looking at drones to purchase.  He visited Defendants' website at http://www.onagofly.com, where he reviewed various marketing material and advertisements for Defendants' product.

70.     Plaintiff Watts purchased the drone for $259 directly from the indiegogo site in or around January 2016.

71.     To date, Plaintiff Watts still has not received the Onagofly drone that he purchased in January 2016, some ten months later.

///

72.     Plaintiff Watts sent several emails to the Onagofly customer service regarding the status of his shipment.  All emails went unanswered.

73.     Plaintiff Watts also repeatedly called the Onagofly customer service in order to obtain updated shipping information, and these telephone calls went unanswered as well.

74.     Plaintiff Watts filed a complaint directly with indiegogo when it was evident that he would not receive the product he paid for.  Indiegogo denied his request for a refund.

## CLASS ALLEGATIONS

75.     Plaintiffs bring this class action for injunctive and related equitable relief on behalf of herself, and as a class action on behalf of the following putative class (hereafter the "Class"):

**All persons who purchased an Onagofly drone and/or its accessories within the applicable statute of limitations preceding the filing of this action through the present.**

Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

76.     Excluded from the Class are (i) any judge presiding over this action and members of their families; (ii) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (iii) any individual who received complete remuneration from Defendants; (iv) persons who properly execute and file a timely request for exclusion from the Class; and (v) the legal representatives, successors or assigns of any such excluded persons.

77.     **Numerosity:** The exact number of Class members is unknown to Plaintiffs at this time, but on information and belief, Defendants have sold its product and its accessories to thousands of Class members throughout the country, making joinder of each individual member impracticable.  Ultimately, the Class Members will be easily identified through Defendants' records since all purchases were tracked by Defendants.  Such information can be ascertained through appropriate investigation and discovery, including Defendants' records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

78.   **Commonality and Predominance:**  There is a well-defined community of interest in the questions of law and fact involved affecting the plaintiff Class and these common questions predominate over any questions that may affect individual Class members.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members.  Defendants made standardized misrepresentations and uniform omissions that affected the Plaintiffs and all members of the Class.  Common questions include but are not limited to:

a.  Whether Defendants' activities related to the representations and omissions, marketing, and sale of the Onagofly drone and its accessories constitutes false or misleading advertising;

b.  Whether Defendants' activities related to representations and omissions, marketing and sale of the Onagofly drone and its accessories constitutes unfair, unlawful and/or fraudulent business practices;

c.  Whether Defendants have breached agreements to provide the drones and its accessories to proposed class members;

d.  Whether Defendants' representations, concealments, and non-disclosures concerning the Onagofly drone and its accessories are material;

e.  The nature and extent of damages and other remedies to which the wrongful conduct of Defendants entitles the Class members; and

f.  Whether Defendants' representations, concealments and non-disclosures concerning the Onagofly drone violate the state consumer protection statutes alleged herein;

g.  Whether Defendants made the representations alleged above, and whether those representations were false;

h.  Whether the Class are entitled to injunctive relief prohibiting the challenged wrongful practices and enjoining such practices in the future;

i.  Whether the Class are entitled to damages, and in what amount(s);

j.  Whether the Class are entitled to restitution, and in what amount(s);

k.  Whether Plaintiffs and the Class are entitled to attorneys' fees and expenses, and in what amount(s);

14

l.  Whether, to the extent applicable, Defendants intended that Plaintiffs and members of the Class rely upon Defendants' misrepresentations and purchase Defendants' product;

m.  Whether Defendants were unjustly enriched as a result of receiving payment(s) from Plaintiffs and the Class; and

n.  Whether Plaintiffs and the Class are entitled to relief, and the nature of such relief.

79.     **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class.  Plaintiffs purchased Defendants' product and its accessories based upon misrepresentations and omissions prominently displayed on its website, as did the other members of the Class. Further, Plaintiffs and the Class were all victims of uniform material omissions.  Plaintiffs and the Class sustained damages as a result of Defendants' uniform wrongful conduct.  The claims of Plaintiffs and the Class Members arise from the same practice or course of conduct, i.e., Defendants' deceptive representations and omissions.

80.     **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex litigation and class actions.  Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and Plaintiffs' Counsel has the financial resources to do so.

81.     **Superiority and Appropriateness:** Plaintiffs and the members of the Class have suffered, and more will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct.  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct.  Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.  Even if members of the Class could sustain such individual litigation, it would not be

preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

82. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

83. Adjudication of individual class members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

84. Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the population of buyers who have been misled, all members of the Class, will continue to grow.

## Amount in Controversy

85. Plaintiffs make no specific allegations that the amount in controversy (including requests for attorneys' fees, injunctive and other relief) exceeds any specific dollar amount in total, though, upon information and belief, Plaintiffs believe the amount at issue is not in excess of $5 million dollars.

## COUNT I

## Breach of Contract

86. Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

///

16

87.    Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

88.    Plaintiffs and other Class members each entered into a valid, enforceable contract with Defendants requiring Plaintiffs and other Class members to pay for the Onagofly drone and its accessories and for Defendants to provide the Onagofly drone and its accessories.

89.    Plaintiffs and other Class members complied and fulfilled all obligations under the contract and/or have had any alleged non-performance excused by reason of Defendants' actions.

90.    Defendants have breached their contract with Plaintiffs and other Class members by failing to perform their obligations under the contract by either or both (1) not providing the product and its accessories in a timely manner or at all, and (2) providing a product that did not contain the characteristics of the product promised for sale.

91.    Defendants have materially breached their contract with Plaintiffs by either or both (1) not providing the product and its accessories in a timely manner or at all, and (2) providing a product that did not contain the characteristics of the product promised for sale.

92.    As a direct result of material breaches of the contract by Defendants as set forth herein, Plaintiffs were damaged as may be shown according to proof at time of trial.

## COUNT II

### Breach of Implied Covenant of Good Faith and Fair Dealing

93.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

94.    Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

95.    Plaintiffs and other Class members each entered into a valid, enforceable contract with Defendants requiring Plaintiffs to pay for the Onagofly drone and its accessories and for Defendants to provide the Onagofly drone and its accessories.

96.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance.  The contracts between Plaintiffs and other Class members, and Defendants, contain an implied covenant of good faith and fair dealing whereby neither party can do anything to

infringe upon the other party's rights to the benefits of the contracts.  Accordingly, Defendants had a duty to act in good faith and consistent with the terms of the contracts.

97.    Defendants' conduct, as set forth herein, breached the implied covenant of good faith and fair dealing in the contracts with Plaintiffs and other Class members.

98.    For example, Defendants have materially breached the implied covenant of good faith and fair dealing by, amongst other things set forth in this Complaint, promising to provide the product, and in a timely manner, and failed to do so, and promising to deliver a product and its accessories that contained the characteristics of the product promised for sale, and failing to provide such a product.

99.    As a direct result of Defendants' material breach of the covenant of good faith and fair dealing, as set forth herein, Plaintiffs have been damaged as may be shown according to proof at time of trial.

## COUNT III

### Promissory Estoppel

100.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

101.    Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

102.    In the contracts, Defendants expressly and impliedly promise promising to deliver to Plaintiffs and other Class members a product and its accessories that contained the characteristics of the product promised for sale.

103.    Plaintiffs and other Class members reasonably relied on these promises.

104.    Plaintiffs' and other Class members' reliance was justified.

105.    Plaintiffs and other Class members, to their detriment, purchased the product and its accessories based on those representations.

106.    Notwithstanding this reliance, Defendants failed to honor their promise to deliver a product and its accessories that contained the characteristics of the product promised for sale in exchange for Plaintiffs' and other Class members' payment for the purchase.

107.   Injustice can be avoided only by enforcing Defendants' promises, assurances and representations.

108.   As a result of Defendants' conduct, Plaintiffs and other Class members suffered damages, which may be shown according to proof at time of trial.

### COUNT IV

### Common Law Fraud

109.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

110.   Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

111.   Defendants represented, in a single, consistent and uniform manner, that the Onagofly drone and its accessories would have certain set, objective characteristics that the Plaintiffs and other Class members could consider, evaluate and rely upon for their purchase of the product.

112.   Defendants' statements about the characteristics of the drone and its accessories as set forth in this Complaint in exchange for Plaintiffs' purchases as set forth more fully above are false.

113.   Defendants knew or should have known the representations set forth herein were false when such representations were made and/or made the representations recklessly and without regard for the truth.

114.   Plaintiffs and the Class reasonably relied upon Defendants' false representations in purchasing the product and its accessories.

115.   Defendants' misleading and fraudulent representations, omissions and conduct was knowing, deliberate, wanton, willful, oppressive and undertaken in conscious disregard of, and with reckless indifference to, Plaintiffs' and other Class members' interest, and otherwise of the character warranting the imposition of punitive damages pursuant to section 3294 of the Civil Code.

116.   Plaintiffs and the Class suffered real economic losses and harm as a result of Defendants' intentional misrepresentations and active concealment, as set forth specifically herein.

117.   Plaintiffs' and the Class' reliance on Defendants' representations were a substantial factor in causing the harm to Plaintiffs and the Class.

### COUNT V

### Violation of Cal. Bus. & Prof. Code 17200, *et seq.*

118.   Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

119.   Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

120.   California Business and Professions Code § 17200 prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code §17200, *et seq.*

121.   As alleged herein, Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions. Specifically, to the extent applicable, Plaintiffs purchased Defendants' product, doing so in part based upon the false representations and omissions regarding the characteristics of the product. Plaintiffs (and other Class members) would not have purchased the product had they known Defendants' representations in advertising and marketing the product were false.

122.   **Unlawful Business Practices:** The actions of Defendants, as alleged herein, constitute illegal and unlawful practices committed in violation of the Business & Professions Code §17200; and constitute unfair, deceptive, untrue, or misleading advertising in violation of Business and Professions Code § 17500.  This prohibition extends to any statement, omission, or conduct or pattern of activity engaged in within California which affects the rights of consumers within the State of California and elsewhere.

123.   Defendants have committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating Business & Professions Code § 17200 *et seq.*, and Business & Professions Code § 17500, *et seq.*, and the common law.

124.    In addition, Defendants have engaged and is engaging in acts and practices that constitute unlawful business practices by promising to provide products that Defendants knew, or should have known, it did have the characteristics promised in their marketing and advertising.

125.    Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

126.    **Unfair Business Practices**: California Business & Professions Code § 17200 also prohibits any "unfair ... business act or practice."

127.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq.*, in that its conduct offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

128.    Defendants' unfair business practices alleged results in substantial consumer injury, creates an unreasonable cost to consumers who are likely to be misled into paying for a product which is not, as represented, of value given it is not as advertised or promised.  There is no countervailing benefit to Defendants' conduct.

129.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein, including but not limited to accurately describing the product being offered for sale.

130.    **Fraudulent Business Practices**: California Business & Professions Code § 17200 also prohibits any "fraudulent business act or practice."

131.    Defendants' claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the public within the meaning of Business & Professions Code § 17200.

132.    Defendants' conduct caused and continues to cause injury to Plaintiffs and the other Class members.  Plaintiffs and other Class members have suffered injury in fact and has lost money as a result of Defendants' unfair conduct.

133.     Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs and the Class seek an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including but not limited to: (a) marketing, or advertising the business with false representations set forth above; (b) engaging in any of the illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct described herein; and (c) engaging in any other conduct found by the Court to be illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct.

134.     Were it not for Defendants' wrongful conduct alleged herein, Plaintiffs and other Class members would not have paid the contracted or any amount for an Onagofly F115 drone and its accessories.

135.     In addition, Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such illegal practices as provided in Bus. & Prof. Code § 17203, and for such other relief as set forth below.

## COUNT VI

### Violation of California Consumers Legal Remedies Act,

### Cal. Civ. Code § 1750, *et seq.*

136.     Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

137.     Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

138.     As alleged herein, Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions. Specifically, Plaintiffs purchased Defendants' products and its accessories and in so doing, relied upon or can be presumed to have relied upon the false representations made by Defendants regarding the product.  Plaintiffs and other Class members would not have purchased the product and its accessories had they known Defendants' advertising claims were false.

139.    Defendants violated California's Consumer Legal Remedies Act ("CLRA") including Civil Code § 1770(a)(5) and (a)(7), in engaging in conduct likely to and, in fact did, mislead Plaintiffs and other Class members.

140.    Defendants violated the CLRA by, inter alia, publicly disseminating false and misleading advertisements and other statements or omissions that represented that the product has characteristics and benefits which it does not have or were of a particular standard, quality, or grade when they were of another in transactions which are intended to result, or which have resulted, in consumers paying for the product.

141.    Defendants' false and misleading advertisements were disseminated to increase the sales of the product and its accessories.  Defendants knew or should have known that their advertisements were false and misleading.

142.    Plaintiffs and the members of the Class have suffered harm as a result of these violations of the CLRA because they purchased a product that they otherwise would not have. Were it not for Defendants' wrongful conduct, Plaintiffs and other Class members would not have paid for the product.

143.    Defendants are aware, or by the exercise of reasonable care should have been aware, that the representations were untrue or misleading.

144.    Plaintiffs and the members of the Class have suffered injury in fact and have lost money as a result of Defendants' false representations and false advertising, and will continue to suffer injury within the meaning of the CLRA until reasonably informed of the truth about the Onagofly F115 drone and how, contrary to Defendants' pervasive marketing and advertising, and other materials, the product does not possess the characteristics advertised.

145.    Plaintiffs and the Class have given notice to Defendants under and in accordance with California Civil Code § 1782 starting on or around December 28, 2016, via certified mail, return receipt requested.  Counsel for the Plaintiffs and the purported counsel for ARI have exchanged written communications and have had numerous conversations, but  Defendants have failed and/or refused to remedy the alleged violations of the CLRA.  The class will amend this Complaint as necessary to state a claim for damages, including punitive damages, in the event this

23

1  statutory notice expires with Defendants' taking all remedial actions demanded by Plaintiffs and the

2  Class in that notice.

3      146.    As a result of Defendants' CLRA violations, Plaintiffs and the Class are entitle to

4  declaratory and injunctive relief, and an award of costs, expenses, and attorneys' fees.

5  

**COUNT VII**

6  **Violations of the Illinois Consumer Fraud and Deceptive Business**

7  **Practices Act, 815 ILCS 505/1 *et seq*.**

8      147.    Plaintiffs incorporate the foregoing allegations as fully set forth herein.

9      148.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

10  prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but

11  not limited to the use or employment of any deception, fraud, false pretense, false promise,

12  misrepresentation or the concealment, suppression or omission of any material fact[.]"  815 ILCS

13  505/2.

14      149.    Plaintiffs and other Class members are consumers within the meaning of the ICFA.

15      150.    Plaintiff and other Class members have standing to pursue claims under the ICFA

16  given Defendants' choice-of-law provision providing that Illinois law governs transactions for the

17  purchase of Onagofly F115 drones and its accessories.

18      151.    Defendants made numerous uniform false promises and misrepresentations to

19  Plaintiff and other members of the Class, as alleged herein, in violation of the ICFA.  These in turn

20  deceived and induced Plaintiffs and other Class members into purchasing Defendants' product and

21  its accessories.

22      152.    Defendants also uniformly omitted material facts from its marketing material and

23  websites, as alleged herein, in violation of the ICFA.  But for these omissions, Plaintiffs and

24  members of the Class (nor any reasonable person) would not have purchased Defendants' product

25  and its accessories.

26      153.    Defendants made these misrepresentations and omissions with the intent, or with

27  reckless disregard, that Plaintiffs and other Class members would rely and/or be induced into

28  purchasing Defendants' product and its accessories.

24

154.    Defendants' deceptive and other wrongful practices (including the deception of Plaintiffs and the Class) occurred in the course of conduct involving trade or commerce, specifically, the marketing and sale of the Onagofly F115 drone and its accessories.

155.    Defendants' conduct in misrepresenting the Onagofly F115 drone offends public policy, is unethical, and causes substantial injury to consumers by inducing them to buy a product and its accessories worth far less than what they paid for them.

156.    Defendants' material misrepresentations and omissions aside, Defendant further violated the ICFA, among other ways, as follows:

    a.  By concealing their corporate identity and involvement in other questionable businesses, Defendants caused "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services" in violation of 815 ILCS 510/2(a)(2);

    b.  By falsely representing that their product has ingredients or characteristics that it does not have in violation of 815 ILCS 510/2(a)(5);

    c.  By falsely representing the various features of the product, Defendants represented that their product had uses or benefits that it does not have in violation of 815 ILCS 510/2(a)(5);

    d.  By falsely representing their product's characteristics, Defendants advertised goods with intent not to sell them as advertised in violation of 815 ILCS 510/2(a)(9);

    e.  Through the general course of their conduct, as well as their misrepresentations and omissions, Defendants engaged in conduct "which similarly creates a likelihood of confusion or misunderstanding" in violation of 815 ILCS 510/2(a)(12).

157.    In addition, Defendants' internet sales operation, which upon information and belief constitutes the overwhelming majority if not all of Defendants' sales, constitutes a catalog business.

158.    Defendants used a street address for the receipt or delivery of mail to and from consumers pertaining to the Onagofly F115 drone and its accessories, as well as an internet address for electronic communications to and from consumers pertaining to the Onagofly F115 drone and its accessories.

159.    Despite this, Defendants failed to disclose the legal names (and, upon information and belief, the address) under which the Defendants operated, using instead fictitious names and

other deceptive and fictitious arrangements to mask their true identities and involvement in violation of 815 ILCS 505/2B.1.

160.    As a proximate result of Defendants' violations as described herein, Plaintiffs and other Class members have been harmed and suffered actual monetary damages.

## COUNT VIII

### Violations of the Michigan Consumer Protection Act,

### Mich. Comp. L. § 445.901, *et seq.*

161.    Plaintiffs incorporate the foregoing allegations as fully set forth herein.

162.    The Michigan Consumer Protection Act ("MCPA"), Mich. Comp. L. § 445.901, *et seq.*, "prohibit[s] certain methods, acts and practices in trade or commerce[.]"

163.    Plaintiffs and other Class members are consumers, having purchased Defendants' product and its accessories.  Plaintiffs and other Class members have standing to pursue claims under the MCPA.

164.    Defendants made numerous uniform false promises and misrepresentations alleged herein to Plaintiffs and other Class members which violated the MCPA in the following ways:

   a. "Causing a probability of confusion or misunderstanding as to the source . . . of goods[.]," Mich. Comp. L. § 445.903(1)(a);

   b. "Representing that goods . . . have . . . characteristics" or "uses . . . that they do not have[,] Mich. Comp. L. § 445.903.1(c);

   c. "Representing that goods . . . are of a particular standard, quality, or grade, or that goods are of a particular style or model," Mich. Comp. L. § 445.903(1)(e);

   d. "Advertising or representing goods . . . with intent not to dispose of those goods . . . as advertised or represented," Mich. Comp. L. § 445.903(1)(g);

   e. "Advertising goods . . . with intent not to supply reasonable expectable public demand," Mich. Comp. L. § 445.903(1)(h);

   f. Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided," Mich. Comp. L. § 445.903(1)(q);

g. "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer," Mich. Com. L. § 445.903(1)(s);

h. "Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is," Mich. Comp. L. § 445.903(1)(bb); and

i. "Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner," Mich. Comp. L. § 445.903(1)(cc).

165. Defendants' misrepresentations and omissions deceived and induced Plaintiffs and other Class members into purchasing Defendants' product and its accessories.

166. Defendants uniformly omitted material facts from its marketing material and websites as allege herein. But for these omissions, Plaintiffs and other Class members (nor any reasonable person) would not have purchased Defendants' product and its accessories.

167. Defendants made these misrepresentations and omissions with the intent, or reckless disregard, that Plaintiffs and other Class members would rely and/or be induced into purchasing Defendants' product and its accessories.

168. Defendants' deceptive practices (including the deception of Plaintiffs and other Class members) occurred in the course of conduct involving trade or commerce, specifically, the marketing and sale of the Onagofly F115 drone and its accessories.

169. Defendants' conduct in misrepresenting their products offends public policy, is unethical, and causes substantial injury to consumers by inducing them to buy a product and its accessories worth far less than what they paid for it.

170. As a proximate result of Defendants' violations of the MCPA, as described herein, Plaintiffs and other Class members have been harmed and suffered actual monetary damages.

## COUNT IX

### Violations of the Minnesota Deceptive Trade Practices Act,

### Minn. Stat. § 325F, *et seq.*

171. Plaintiffs incorporate the foregoing allegations as fully set forth herein.

27

172.    The Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. §325D, et seq. prohibit, inter alia, "an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading[,] Minn. Stat. § 325F.67.

173.    Plaintiffs and other Class members are consumers, having purchased Defendants' product.  Plaintiffs and other Class members have standing to pursue claims under the MDTPA.

174.    Defendants made numerous uniform false promises and misrepresentations alleged herein to Plaintiffs and other Class members which violated the MDTPA, including in the following ways:

   a.  Representing that goods have "characteristics, ingredients, uses, benefits, or quantities that they do not have….," Minn. Stat. § 325D.44(5);

   b.  Representing that goods "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are another," Minn. Stat. § 325D.44(7);

   c.  Advertising goods "with intent not to sell them as advertised," Minn. Stat. § 325D.44(9);

   d.  Advertising goods "with intent not to supply reasonably expectable public demand….," Minn. Stat. § 325D.44(10); and

   e.  Engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding," Minn. Stat. § 325D.44(13).

175.    Defendants' misrepresentations and omissions deceived and induced Plaintiffs and other Class members into purchasing Defendants' product and its accessories.

176.    Defendants uniformly omitted material facts from its marketing material and websites as allege herein.  But for these omissions, Plaintiffs and other Class members (nor any reasonable person) would not have purchased Defendants' product and its accessories.

177.    Defendants made these misrepresentations and omissions with the intent, or reckless disregard, that Plaintiffs and other Class members would rely and/or be induced into purchasing Defendants' product and its accessories.

178.    Defendants' deceptive practices (including the deception of Plaintiffs and other Class members) occurred in the course of conduct involving trade or commerce, specifically, the marketing and sale of the Onagofly F115 drone and its accessories.

179.    Defendants' conduct in misrepresenting their products offends public policy, is unethical, and causes substantial injury to consumers by inducing them to buy a product and its accessories worth far less than what they paid for them.

180.    As a proximate result of Defendants' violations of the MDTPA, as described herein, Plaintiffs and other Class members have been harmed and suffered actual monetary damages.

## COUNT X

### Unjust Enrichment / Restitution

181.    Plaintiffs incorporate the foregoing allegations as fully set forth herein.

182.    Defendants have knowingly received and retained benefits from Plaintiffs and the Class under circumstances that would render it unjust to allow Defendants to retain such benefits.

183.    By inducing Plaintiffs and the Class to purchase a product and its accessories with omissions and misrepresentations as to the product's true characteristics, Defendants caused Plaintiffs and the Class to pay for a product they would not have paid for (or at least, paid as much as they did); thus Defendants knowingly received and appreciated benefits at the expense and to the detriment of Plaintiffs and other Class members.

184.    Defendants' receipt of monies from Plaintiffs and other Class members allowed them to utilize those monies for their own purposes, without expending resources to deliver the goods they promised.

185.    Defendants appreciate or have knowledge of that benefit.

186.    Under principles of equity and good conscience, Defendants should not be permitted to retain the monies belonging to Plaintiffs and other Class members they were paid in the form of payment for the Onagofly drone product and that Defendants unjustly received as a result of its misconduct alleged herein.

### Need For Injunctive Relief

187.    Plaintiffs incorporate the foregoing allegations as fully set forth herein.

188.    By committing the acts alleged herein, Defendants, and each of them, have caused and continue to cause irreparable harm for which there is no plain, speedy or adequate remedy at law.   In the absence of equitable relief, Plaintiffs, members of the Class, Defendants' business competitors, and the general public are in substantial risk of harm.

### Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Class, pray that the Court enter an order and judgment in their favor and against Defendants as follows:

(a)    Certifying this case as a class action, designating Plaintiffs as Class Representatives and their attorneys as Class Counsel;

(b)    Awarding actual damages to the Plaintiffs and the Class in an amount to be proven at trial;

(c)    Granting equitable and injunctive relief to Plaintiffs and the Class, including restitution, disgorgement, and an accounting of all revenue gained by Defendants through the unlawful conduct alleged herein;

(d)    Awarding punitive damages as appropriate;

(e)    Awarding Plaintiffs and the Class reasonable costs and attorneys' fees;

(f)    Awarding Plaintiffs and the Class pre- and post-judgment interest; and

(g)    Awarding Plaintiffs and the Class such other further relief, including all equitable relief, as may be just and proper.

///
///
///
///
///
///
///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE**

Upon the commencement of this action, a copy of the foregoing complaint has been sent to the Attorney General of Illinois.  Upon entry of any judgment or order in this action, a copy of such judgment or order will be sent to the Attorney General of Illinois.

Dated: March 27, 2017                    CARTER WOLDEN CURTIS, LLP

By: _____
KIRK J. WOLDEN
Attorney for Plaintiffs and the Proposed Class

31

1

## __JURY TRIAL DEMANDED__

2          Plaintiffs demand a jury trial on all triable issues.

3   Dated: March 27, 2017                    CARTER WOLDEN CURTIS, LLP

4

5

6                                    By: _____
                                          KIRK J. WOLDEN
7                                         Attorney for Plaintiffs and the Proposed Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28